RALPH ATTIANESE, Claimant, *v.* STATE OF NEW YORK, Defendant.
(Claim No. 35347.)

Court of Claims, July 26, 1962.

*Rosemary Fallon Byron* and *Francis Martocci* for claimant. *Louis J. Lefkowitz, Attorney-General* (*Lawrence Wayne* of counsel), for defendant.

PAUL C. REUSS, J.   The claim herein was duly filed and served on February 13, 1958.   Subsequent thereto, upon stipulation of the parties, an order was made by the Honorable RUSSELL G. HUNT, then a Judge of this court, and entered March 27, 1958 dismissing the claim of Margaret Attianese.   Accordingly, this memorandum is concerned with the claim of Ralph Attianese. This claim has not been assigned.

On November 16, 1957 in the vicinity of Palenville, Greene County, New York, at about 10:30 P.M., claimant was operating his father's 1950 Chevrolet in an eastbound direction on N. Y. Route No. 23A, a highway maintained by the State of New York. The night was clear and the road was dry.   At a point on said highway, between the Villages of Palenville and Catskill, in the vicinity of a driveway on the south side of the road, owned by one Jean Harvey, the claimant's vehicle crossed the highway, travelled in an easterly direction along the shoulder adjacent to the westbound lane and eventually struck a tree located on such shoulder causing considerable damage to the vehicle and serious injuries to the claimant.

Claimant stated that as he came out of a curve onto a straight-away, he was blinded by the lights of an oncoming car, traveling in the center of the road.   He pulled to the right, but his right wheels did not enter upon the south shoulder until after the oncoming vehicle had passed him.   Thereafter his front wheels regained the road but as his rear wheels " got back on he went into a ' spin '."   He was operating his car at a speed of 30 to 35 miles per hour at the time.   He recalls no other pertinent details,

he could not say if he applied his brakes, nor does he remember where he entered upon the shoulder, how far he went on the south shoulder, where he returned to the pavement, or being on the north shoulder at all.

Claimant's father appeared as a witness in behalf of his son and testified that on the day following the accident he found parts of his car near the tree struck by the claimant. He observed only one set of tire marks running 7 feet from the pavement to the tree. There were no tire marks on the road, but he crossed over to the south side in this location, and found a " scuff mark " at a point where there was a rut of 4 to 5 inches between the pavement and the south shoulder. This " rut " was 100 to 125 feet long and was 2 to 5 inches deep, but east of Harvey's driveway.

Two other witnesses, called by the claimant, testified to the existence of a " rut " in the south shoulder where it adjoined the eastbound lane of the highway. One, a local garageman described the drop off as being 6 to 9 inches deep, and starting from Harvey's driveway and running 300 to 400 feet east thereof.

Another witness testified that the distance from his driveway to the tree struck by the claimant was less than 200 feet, that the south shoulder in this area was in " poor condition " " was quite low " the drop was " noticeable " or " not level " or the rut was " intermittent like " he gave no specific details of the condition but stated the shoulder was repaired once a year by the State.

On the other hand the State light maintenance foreman and two troopers, who investigated the accident, stated that the south shoulder in the area in question was in good condition and there were no ruts in it. One of the troopers investigated the south shoulder only in the vicinity of Harvey's driveway.

With the exception of the claimant, whose recollection was very hazy, at best, there were no eyewitnesses to tell us how the accident actually happened, so in arriving at our decision herein we must rely primarily on the physical facts presented as evidence upon the trial.

We find the testimony of the claimant's witness with respect to the specific condition of the shoulder and the extent and size of the alleged rut very conflicting. Claimant offered no proof as to where his vehicle entered upon the south shoulder or where he attempted to regain the pavement, except for the speculation of John Attianese. And his testimony is entirely speculative.

On the other hand, two troopers who investigated the accident, immediately after it occurred, found a tire track running from the claimant's vehicle, as it rested against the tree, 132 feet west on the north shoulder parallel with the highway, but finally leading to the pavement. The troopers found no tire marks on the

pavement. They investigated the south shoulder in the area the tire track returned to the westbound lane and found such shoulder in good condition and without any physical indications that the claimant entered upon it. They also found the north shoulder in good condition for the entire course of the tire mark. This testimony negates the contention of the claimant that a rut in the south shoulder in the vicinity of the tree was the proximate cause of the accident.

We accept the testimony of the troopers. It was their duty to investigate, they performed such duty immediately after the accident occurred, and had the best opportunity to observe the physical conditions extant at such time. In my view, the evidence supports a finding that the claimant entered upon and travelled 132 feet on the north shoulder without attempting to regain the highway or to stop or slow his vehicle. We also note that despite an alleged speed of 30 to 35 miles per hour the vehicle in question struck the tree with sufficient force to destroy the transmission and front end, pushing the latter assembly back 4 inches.

Under the credible evidence presented we can only speculate as to why the claimant drove his vehicle upon the north shoulder of the road, but we can make a finding that he has failed to prove that any act or omission on the part of the State of New York caused him to do so.

The presence of the tree upon the north shoulder was not a proximate cause of the accident to the claimant. (*Kinne* v. *State of New York,* 8 A D 2d 903, affd. 8 N Y 2d 1068; *Ellis* v. *State of New York,* 16 A D 2d 727.)

We find that the claimant has failed to prove, by a fair preponderance of the credible evidence that any negligence on the part of the State of New York was a proximate cause of his accident. We also find the claimant failed to establish his freedom from contributory negligence.

The claim of Ralph Attianese against the State of New York must be and hereby is dismissed.